22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1 ABE SAAD, a/k/a IBRAHIM SAAD,
D-2 CHAD KAZAN,
D-3 WALLEED AL-BIRAIHY,

Defendants.

_____/

Case:2:21-cr-20265
Judge: Murphy, Stephen J.
MJ: Altman, Kimberly G.
Filed: 04-21-2021 At 01:02 PM
USA V SEALED MATTER (LG)

VIO:  18 U.S.C. § 1349
      18 U.S.C. § 1347
      18 U.S.C. § 1343
      21 U.S.C. § 846
      21 U.S.C. § 841(a)(1)

## INDICTMENT

**THE GRAND JURY CHARGES**:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Pharmacy

1.      Maya Pharmacy, LLC ("Maya") was a pharmacy and Michigan limited liability company located at 15400 Michigan Avenue, Dearborn, Michigan 48125.

### Defendants and Related Individuals

2.      Defendant ABE SAAD, a/k/a IBRAHIM SAAD, a resident of Wayne County, Michigan, was the owner and manager of Maya.

3.     Defendant CHAD KAZAN, a resident of Wayne County, Michigan, was a technician at Maya.

4.     Defendant WALLEED AL-BIRAIHY, a resident of Wayne County, Michigan, was a patient recruiter who brought patients to Maya in order to obtain controlled substance prescriptions.

5.     Physician A was a licensed medical doctor in the state of Michigan and was authorized by the Drug Enforcement Administration ("DEA") to prescribe controlled substances in Schedules II – V.

## The Medicare and Medicaid Programs

6.     The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

7.     Medicare covered different types of benefits and was separated into different program "parts."  Medicare Part D subsidized the cost of prescription drugs for Medicare beneficiaries in the United States.  Generally, Medicare Part D covered part or all of the costs of prescription drugs dispensed to a Medicare beneficiary if,

among other requirements, the prescription drugs were medically necessary and ordered by a physician.

8.    Physicians, pharmacies, and other health care providers that provided medical services that were to be reimbursed by Medicare were referred to as Medicare "providers." To participate in Medicare, providers were required to submit applications in which the providers agreed to comply with all Medicare-related policies and procedures, rules, and regulations issued by CMS and its agents and contractors, including those governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims.

9.    If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for the processing and payment of claims.

10.    In order to receive Medicare Part D benefits, a beneficiary enrolled in one of several Medicare drug plans.  Medicare drug plans were operated by private health care insurance companies approved by Medicare.  Those companies were often referred to as drug plan "sponsors."  A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription drugs.

11.     Medicare, through CMS, compensated the Medicare drug plan sponsors for providing prescription drug benefits to beneficiaries.  Medicare paid the sponsors a monthly fee for each Medicare beneficiary enrolled in the sponsors' plans.  Such payments were called capitation fees.  The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions.  In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

12.     The Michigan Medicaid program ("Medicaid") was a federal and state funded health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care.  CMS was responsible for overseeing Medicaid in participating states, including Michigan.  Individuals who received benefits under Medicaid were referred to as Medicaid "beneficiaries."

13.     Medicaid covered the costs of certain medical services, products, and benefits, including prescription drug benefits, for Medicaid beneficiaries.  Generally, Medicaid covered part or all of the costs of prescription drugs dispensed to a Medicaid beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

14.    Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

15.    Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

## The Private Health Insurance Program

16.    Blue Cross and Blue Shield of Michigan ("BCBS") was a nonprofit, privately operated insurance company authorized and licensed to do business in the state of Michigan. BCBS provided health care benefits, including prescription drug benefits, to member entities and individuals. Individuals insured by BCBS were referred to as BCBS "members."

17.    BCBS had agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

18.    BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

## Pharmacy Benefit Managers

19.    Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors), Medicaid

5

health plans, and BCBS.  PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

20.     After a pharmacy dispensed a prescription drug to a beneficiary or member, the pharmacy submitted a claim, typically electronically, to the PBM acting on behalf of the specific health care benefit program.  The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

21.     CVS Caremark, OptumRx, and Express Scripts were three of several PBMs that managed prescription drug benefits for Medicare (through Medicare drug plan sponsors) and Medicaid health plans.  Express Scripts managed prescription drug benefits for BCBS.  CVS Caremark processed and adjudicated claims in Arizona.  OptumRx and Express Scripts processed and adjudicated claims outside the state of Michigan.

22.     CVS Caremark and other PBMs maintained agreements stating that pharmacies were allowed fourteen (14) days from the date of fill to submit claims for reimbursement to PBMs.  These agreements also stated that pharmacies were allowed fourteen (14) days from the date of fill to reverse claims for medications that were not dispensed.

6

## Background on Controlled Substances

23.     The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States.

24.     Under the CSA, the DEA regulated certain pharmaceutical drugs designated as "controlled substances" because of their potential for abuse or dependence, their accepted medical use, and their accepted safety for use under medical supervision. *See* 21 U.S.C. § 802(6).

25.     The DEA issued registration numbers to qualifying practitioners, including pharmacies, which permitted them to prescribe and/or dispense Schedule II, III, IV, and V controlled substances consistent with the terms of that registration. 21 U.S.C. § 823.

## Drug Diversion Scheme

26.     Beginning in or about April 2014, and continuing up to and including May 2016, a scheme and pattern of illegal conduct involving the unlawful distribution of Schedule II and Schedule IV prescription drug-controlled substances was formed and active within the Eastern District of Michigan and elsewhere. The defendants CHAD KAZAN, WALLEED AL-BIRAIHY, Physician A, and others, both known and unknown to the grand jury, played different roles and engaged in different aspects of the overall scheme. The purpose of the scheme was for CHAD

7

KAZAN and others to dispense controlled substances based upon prescriptions written by Physician A to "patients" recruited by WALLEED AL-BIRAIHY.

27.     As part of the conspiracy, WALLEED AL-BIRAIHY recruited "patients" to have controlled substance prescriptions issued in their names by Physician A.   WALLEED AL-BIRAIHY would escort the recruited patients to Physician A's office, where Physician A would write controlled substance and non-controlled substance prescriptions after conducting cursory "examinations" of the patients.  These prescriptions were knowingly issued outside the usual course of professional practice and without a legitimate medical purpose.

28.     WALLEED AL-BIRAIHY would transport the recruited "patients" and the unlawfully issued prescriptions to Maya.  At Maya, CHAD KAZAN and others would dispense the medically unnecessary controlled substances prescriptions to WALLEED AL-BIRAIHY and others.

29.     In furtherance of the conspiracy, CHAD KAZAN, and others at Maya would take actions to make it appear that the dispensing of controlled substances was legitimate.  Things were done for the mere appearance of legitimacy and were not done to actually confirm the prescriptions were issued for a legitimate medical purpose in the usual course of professional medical practice.

30.     The primary controlled substances prescribed by Physician A, outside the usual course of professional practice and without a legitimate medical purpose,

and unlawfully dispensed by CHAD KAZAN and others at Maya, were Hydrocodone, Carisoprodol, and Alprazolam.

31.     The fundamental purpose of both writing and filling the controlled substance prescriptions was not for the legitimate treatment of patients, but, rather, to obtain controlled substances that could be sold at a substantial profit on the illegal street market in the metropolitan Detroit area.

These general allegations are adopted and incorporated in each count of this Indictment.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)
### D-1 ABE SAAD
### D-2 CHAD KAZAN

32.     Paragraphs 1 through 31 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

33.     From at least in or around August 2012, and continuing through in or around June 2019, the exact dates being unknown to the Grand Jury, in Wayne County, in the Eastern District of Michigan, and elsewhere, ABE SAAD, CHAD KAZAN, and others did knowingly and willfully combine, conspire, confederate, and agree to commit certain offenses against the United States, that is:

(a)   to violate Title 18, United States Code, Section 1347, that is, to execute

a scheme and artifice to defraud health care benefit programs affecting

commerce, as defined in Title 18, United States Code, Section 24(b),

that is, Medicare, Medicare drug plan sponsors, Medicaid, Medicaid

health plans, and BCBS, and to obtain, by means of materially false and

fraudulent pretenses, representations, and promises, money and

property owned by, and under the custody and control of, said health

care benefit programs, in connection with the delivery of and payment

for health care benefits, items, and services; and

(b)   to violate Title 18, United States Code, Section 1343, that is, to transmit

and cause to be transmitted by means of wire communication in

interstate and foreign commerce, certain writings, signs, signals,

pictures, and sounds, having devised a scheme and artifice to defraud,

and for obtaining money and property by means of materially false and

fraudulent pretenses, representations, and promises, knowing the

pretenses, representations, and promises were false and fraudulent

when made, and for the purpose of executing the scheme and artifice.

### Purpose of the Conspiracy

34.   It was the object and purpose of the conspiracy for ABE SAAD, CHAD

KAZAN, and their co-conspirators to unlawfully enrich themselves and others by,

among other things: (a) submitting, and causing the submission of, through interstate wire communications, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS; (b) concealing, and causing the concealment of, the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendants and others.

### Manner and Means of the Conspiracy

35.   The manner and means by which the defendants and others sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

36.   ABE SAAD and others maintained an NPI for Maya in order to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

37.   ABE SAAD, CHAD KAZAN, and others, on behalf of Maya, entered into pharmacy provider agreements with CVS Caremark, OptumRX, and Express Scripts, among other PBMs.

38.   ABE SAAD, CHAD KAZAN, and others, on behalf of Maya, purchased medications, including Seroquel XR 300 MG, from certain

pharmaceutical wholesalers for the purpose of dispensing to beneficiaries and members.

39. ABE SAAD, CHAD KAZAN, and others submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, via interstate wires and on behalf of Maya for prescription drugs that were not dispensed, at times because the beneficiaries were deceased, and were often medically unnecessary.

40. ABE SAAD, CHAD KAZAN, and others submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, via interstate wires and on behalf of Maya, for drugs purportedly dispensed, including Seroquel XR 300 MG, in quantities that exceeded the amount Maya actually purchased from pharmaceutical wholesalers.

41. ABE SAAD, CHAD KAZAN, and others failed to reverse claims for medications that were not dispensed, which allowed Maya to maximize the amount of proceeds obtained from Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

42. False and fraudulent claims that ABE SAAD, CHAD KAZAN, and others electronically submitted, and caused to be electronically submitted, to Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were

processed and adjudicated electronically by CVS Caremark, OptumRx, and Express Scripts, among other PBMs, outside the state of Michigan.

43.     False and fraudulent claims that ABE SAAD, CHAD KAZAN, and others electronically submitted, and caused to be electronically submitted, to BCBS were processed and adjudicated electronically by Express Scripts outside the state of Michigan.

44.     ABE SAAD, CHAD KAZAN, and others submitted and caused to be submitted at least $1,978,296.93 in false and fraudulent claims to Medicare and Medicaid on behalf of Maya.

45.     ABE SAAD, CHAD KAZAN, and others submitted and caused to be submitted at least $42,581.69 in false and fraudulent claims to BCBS on behalf of Maya.

46.     ABE SAAD and CHAD KAZAN personally profited from their participation in the scheme by receiving fraud proceeds for the personal use and benefit of themselves and others directly or indirectly through interstate wires.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-5
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)
### D-1 ABE SAAD
### D-2 CHAD KAZAN

47.     Paragraphs 1 through 31 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

48.     Beginning in or around August 2012, and continuing through at least in or around June 2019, in Wayne County, in the Eastern District of Michigan, and elsewhere, ABE SAAD and CHAD KAZAN, as specified below, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and BCBS drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

49.     Paragraph 34 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the purpose of the scheme and artifice.

14

**The Scheme and Artifice**

50.     Paragraphs 35 through 46 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution of the Scheme and Artifice**

51.     On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, ABE SAAD, CHAD KAZAN, and others did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in that ABE SAAD, CHAD KAZAN, and others submitted and caused the submission of false and fraudulent claims for payment and falsely represented that Maya provided prescription medications to Medicaid beneficiaries, as described in Paragraphs 35 to 46 of this Indictment, as if they were dispensed to beneficiaries, but in fact never were dispensed to those beneficiaries, with each execution set forth below forming a separate count:

15

| Count | Defendant(s) | Beneficiary | Approx. Purported Service Date | Description of Prescription Medication | Approx. Billed Amount | Approx. Paid Amount |
|-------|--------------|-------------|-------------------------------|----------------------------------------|------------------------|----------------------|
| 2 | D-1 ABE SAAD D-2 CHAD KAZAN | D.B. | 5/3/2016 | Seroquel XR 300 MG | $1,730.30 | $1,328.05 |
| 3 | D-1 ABE SAAD D-2 CHAD KAZAN | C.J. | 5/5/2016 | Seroquel XR 300 MG | $1,730.30 | $1,328.05 |
| 4 | D-1 ABE SAAD D-2 CHAD KAZAN | N.A. | 5/5/2016 | Seroquel XR 300 MG | $1,730.30 | $1,328.05 |
| 5 | D-1 ABE SAAD D-2 CHAD KAZAN | N.H. | 5/9/2016 | Seroquel XR 300 MG | $1,730.30 | $1,328.05 |

Each in violation of Title 18, United States Code, Sections 1347 and 2.

### COUNT 6
**Conspiracy to Distribute Controlled Substances**
**(21 U.S.C. § 846)**
**D-2 CHAD KAZAN**
**D-3 WALLEED AL-BIRAIHY**

52.     Paragraphs 1 through 31 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

53.     From in or around April 2014, and continuing through in or around at least May 2016, the exact dates being unknown to the Grand Jury, in Wayne County, in the Eastern District of Michigan, and elsewhere, defendants CHAD KAZAN and

WALLEED AL-BIRAIHY knowingly, intentionally, and unlawfully combined, conspired, confederated, and agreed with each other, and other persons known and unknown to the Grand Jury, to commit offenses against the United States, that is, to knowingly, intentionally, and unlawfully distribute and to dispense, outside the usual course of professional practice, not for a legitimate medical purpose, Schedule II-V controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), including, but not limited to the Schedule II controlled substance Hydrocodone (on or after October 6, 2014), the Schedule III controlled substance Hydrocodone (prior to October 6, 2014), and the Schedule IV controlled substances Carisoprodol and Alprazolam.

In violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.

### COUNTS 7-10
### 21 U.S.C. § 841(a)(1) (Unlawful Distribution of Controlled Substances)
### 18 U.S.C. § 2 (Aiding and Abetting)
### D-2 CHAD KAZAN
### D-3 WALLEED AL-BIRAIHY

54.     On or about each of the dates set forth below, defendants CHAD KAZAN and WALLEED AL-BIRAIHY, did knowingly, intentionally, and unlawfully distribute and aid and abet each other in distributing the identified prescription drug controlled substances by dispensing or possessing with intent to distribute the controlled substances outside the scope of usual professional

17

practice, for no legitimate medical purpose, in the names of the individuals as follows:

| COUNT | ISSUED ON OR ABOUT | FILLED ON OR ABOUT | PATIENT | CONTROLLED SUBSTANCE | DOSAGE UNIT | Controlled Substance Schedule |
|---|---|---|---|---|---|---|
| 7 | 4/24/2016 | 5/5/2016 | N.A. | HYDROCODON-ACETAMINOPHN 10-325 | 90 | II |
| 8 | 4/24/2016 | 5/5/2016 | N.A. | ALPRAZOLAM 2 MG | 60 | IV |
| 9 | 5/5/2016 | 5/5/2016 | C.J. | HYDROCODON-ACETAMINOPHN 10-325 | 90 | II |
| 10 | 5/5/2016 | 5/5/2016 | C.J. | CARISOPRODOL 350 MG | 60 | IV |

All in violation of Title 21, United States Code, Section 841(a)(1).

## CRIMINAL FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; 21 U.S.C. § 853)

55.     The allegations contained in Counts One through Ten of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981 and 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461.

56.     Upon conviction of the violation alleged in Count One of this Indictment, the convicted defendant(s) shall forfeit to the United States (a) any property, real or personal, that constitutes or is derived from proceeds obtained,

directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461, and (b) any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

57.     Pursuant to 18 U.S.C. § 982(a)(7), upon conviction of any of the violations alleged in Counts Two through Five of this Indictment, the convicted defendant(s) shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s).

58.     Pursuant to 21 U.S.C. § 853(a), upon conviction of any of the offenses set forth in Counts Six through Ten of this Indictment, the convicted defendant(s) shall forfeit to the United States any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense.

59.     Substitute Assets:  If the property described above as being subject to forfeiture, as a result of any act or omission of the convicted defendant(s):

a.     Cannot be located upon the exercise of due diligence;

b.     Has been transferred or sold to, or deposited with, a third party;

c.     Has been placed beyond the jurisdiction of the Court;

d.      Has been substantially diminished in value; or

e.      Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of such defendant(s) up to the value of the forfeitable property described above.

60.     <u>Money Judgment</u>: Upon being convicted of violating any of the offenses alleged in this Indictment, the convicted defendant(s) shall be ordered to pay the United States a sum of money equal to the total amount of proceeds the convicted defendant obtained as a result of such violation(s).

THIS IS A TRUE BILL.

*s/Grand Jury Foreperson*
Grand Jury Foreperson

SAIMA S. MOHSIN
ACTING UNITED STATES ATTORNEY

DANIEL KHAN
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

ALLAN J. MEDINA
Chief, Health Care Fraud Unit
Criminal Division, Fraud Section
U.S. Department of Justice

REGINA MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice

*s/Claire T. Sobczak*
CLAIRE T. SOBCZAK
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

Dated: April 21, 2021

| United States District Court<br>Eastern District of Michigan | **Criminal Case Co** | Case: 2:21-cr-20265<br>Judge: Murphy, Stephen J.<br>MJ: Altman, Kimberly G.<br>Filed: 04-21-2021 At 01:02 PM<br>USA V SEALED MATTER (LG) |

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to com**

| **Companion Case Information** | **Companion Case Number:** |
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** |
| ☐ Yes   ☒ No | **AUSA's Initials:** CTS |

**Case Title:** USA v. Abe Saad, et al.

**County where offense occurred :** Wayne County

**Check One:**   ☒ Felony      ☐ Misdemeanor      ☐ Petty

✓ Indictment/____ Information --- **no** prior complaint.

____ Indictment/____ Information --- based upon prior complaint [**Case number:** ]

____ Indictment/____ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____     **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

April 21, 2021
Date

Claire Sobczak
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (202) 591-5418
Fax: (313) 226-0816
E-Mail address: Claire.Sobczak@usdoj.gov
Attorney Bar #: IL 6310208

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.